FIRST NATIONAL BANK OF BINGHAMTON, N. Y., as Trustee for KATE
S. WEED, Plaintiff, *v.* CELIA GOODMAN and Others, Defendants.

Supreme Court, Special Term, Broome County, March 21, 1940.

*Hinman, Howard & Kattell* [*Thomas B. Kattell* of counsel], for
the plaintiff.

*Levine & Cohen* [*Theodore H. Cohen* of counsel], for the defendants.

DEYO, J. On motion by the plaintiff in a foreclosure action to confirm the report of sale and for a deficiency judgment, pursuant to section 1083-a of the Civil Practice Act, the court appointed a referee to take testimony and report on the fair and reasonable market value of the mortgaged premises. The plaintiff's motion was ordered held in abeyance pending the report of the referee.

It appears that the premises were purchased in 1929 by Celia Goodman and Philip Goodman, deceased, husband and wife, as tenants by the entirety, for $11,000, and the mortgage in question, given January 7, 1930, in the amount of $5,500, payable five years from the date thereof. Philip Goodman died intestate in 1937, and title to the property thereupon vested in the defendant Celia Goodman. Letters of administration were issued in the Philip Goodman estate, and in June, 1938, an accounting was had and the assets distributed among all of the defendants. There was a default in the payment of the installment of interest due July 1, 1938, and in the payment of the 1938 city taxes. The foreclosure action was commenced on or about October 29, 1938. At the foreclosure sale on January 10, 1939, the plaintiff bid in the premises for $3,800. Shortly thereafter the plaintiff resold the premises for $5,250, which, after deducting the brokerage commissions, left a net to the plaintiff of $4,987.50, which, deducted from $6,555.44 due under the judgment, left a balance of $1,567.94. On April 7, 1939, the plaintiff moved for a deficiency judgment of $1,565. The affidavits being numerous and conflicting, the court appointed the referee, whose report is now before us for confirmation.

The hearing before the referee occupied four days and the testimony adduced by the plaintiff and defendants, consisting of some two hundred pages of record, was most exhaustive. The referee has made and filed his report wherein he finds that the fair and reasonable value of the mortgaged premises as of the date of sale thereof was $5,500. Inasmuch as the amount due was $6,555.44, it follows that upon the value as fixed by the referee there would be a deficiency of $1,055.44. The defendants oppose confirmation of the report on the grounds that the findings of the referee are not warranted by the testimony; that the premises had no fair and reasonable market value as of the date of sale thereof, and that the next earlier date when there was a market value was in 1929, when the premises were purchased by the Goodmans for $11,000. The court is unable to agree with this contention. The difficulties that courts experienced in the earlier decisions in determining what constituted " fair and reasonable market value " within the intent and meaning of section 1083-a of the Civil Practice Act were done away with by the Court of Appeals in the oft-cited case of *Heiman*

v. *Bishop* (272 N. Y. 83). The pertinent rule for fixing the market value of real property in a proceeding such as this was therein concisely stated by Judge HUBBS, who, speaking for a unanimous court, said (at p. 88): " In a proceeding under section 1083-a, the court should receive evidence of the age and construction of the buildings on the premises, the rent received therefor, assessed value, location, condition of repair, the sale price of property of a similar nature in the neighborhood, conditions in the neighborhood which affect the value of property therein, accessibility and of all other elements which may be fairly considered as affecting the market value of real property in a given neighborhood. With such evidence before it, the trial court, in the exercise of its best judgment, should determine the market value of the premises in the existing circumstances." No matter what the earlier decisions may have been and no matter what language other courts may have indulged in, the rule promulgated in the decision above must now be followed. (*Schnur Realty Co., Inc.*, v. *906 Intervale Avenue Realty Corp.*, 274 N. Y. 518, *Trustees of Sailors' Snug Harbor* v. *Lassaw Realty Co., Inc.*, 273 id. 609; *Central Hanover Bank & Trust Co.* v. *Kraft*, Id. 634; *Ballin* v. *Apperson Realty Corp.*, 258 App. Div 264; *Hoard* v. *Luther*, 251 id 692; appeal dismissed, 275 N Y 581.)

Adopting the formula laid down in the foregoing authorities, the court finds ample evidence in the record from which the fair and reasonable market value of the premises in question at the time of the sale can be determined. In fact, both plaintiff's and defendants' experts expressly testified that the premises had a fair and reasonable market value as of January 10, 1939. True, their estimates were divergent, but nevertheless they unequivocally stated that there was a market value and what that value was. Consequently, there is neither need nor authority to resort to any earlier date. (*Heiman* v. *Bishop, supra; Ballin* v. *Apperson Realty Corp., supra; Hoard* v. *Luther, supra;* Civ. Prac. Act, § 1083-a.)

The evidence adduced before the referee embraced most if not all of the elements of value enumerated in the formula above set forth. The assessed valuation of the premises was $6,300. The experts called by the plaintiff, all reputable and experienced real estate brokers and builders, placed the market value of the premises at varying figures ranging from $4,990 to $5,276.03. The defendants' experts, likewise reputable and experienced, placed the value between $6,300 and $6,500. All of the witnesses used practically the same factors in arriving at their conclusions, the difference in their conclusions being largely due to the amount of depreciation and the cost of the necessary repairs. The analysis of their respective testimony, as made by the referee, is complete and well prepared,

and any discussion thereof would serve no useful purpose. It is apparent that the trend of the neighborhood is downward, and that the erection of this particular house was an overimprovement. According full weight to all of the testimony concerning all of the various elements and factors which under the decisions go to make up value within the intent and meaning of section 1083-a of the Civil Practice Act, the court is of the opinion that the sum of $5,500 was the fair and reasonable market value of the premises as of January 10, 1939, and the report of the referee is, therefore confirmed.

In passing, it might be noted that the value of the property as found is equal to the amount of principal unpaid on the mortgage, and that the deficiency remaining is substantially made up of interest and taxes, for which amount the plaintiff, under the recent decision of *White* v. *Wielandt* (172 Misc. 686), could have brought an action regardless of the market value of the premises.

We now turn to the question of whom this deficiency judgment should be entered against. As has been noted, the title to the property was originally in Philip and Celia Goodman, husband and wife, as tenants by the entirety. They both joined in the execution of the bond and mortgage. The bond specifically recites that their obligation is joint and several. Philip Goodman died intestate in 1937 and Abram Goodman, a son, was appointee administrator on November 3, 1937. On or about May 6, 1938, while such letters of administration were in full force and effect, the plaintiff served upon the administrator a notice of contingent claim arising by reason of the mortgage. This claim the administrator disregarded and in the month of June, 1938, filed his account, which was judicially settled June 14, 1938, by the surrogate of Broome county. The decree directed that the net estate, amounting to some $13,000, be distributed to the widow and children. The distributive share of the widow was $4,562.74 and that of the four children $2,281.37. The question is whether or not the distributees of Philip Goodman are liable for any portion of the deficiency. The defendants contend that since the mortgaged premises were at no time a part of the estate of Philip Goodman, neither his estate nor his distributees are liable for the deficiency. In other words, the defendants maintain that upon the death of Philip Goodman, his estate was not only divested of all title to the real estate, but was also relieved from all liability upon the mortgage. The cases which counsel for the defendants cites have to do only with the nature of the interest in the real estate which the husband and wife had and which devolved upon the wife on the death of the husband. No authorities are cited which have anything to do with the liability of the husband and wife on the mortgage which both executed, and none have been discovered by the court which are strictly in point.

The decisions which have closest bearing to the case at bar indicate a contrary rule. In *Geldart* v. *Bank of New York & Trust Co.* (209 App. Div. 581) title to the property had been taken by the husband and wife as tenants by the entirety. Both executed the bond and mortgage. The husband died and thus title to the property vested in the wife. Subsequently the wife sold the property. As a part of the purchase price the purchaser assumed the mortgage. The wife treated this as a payment by her of the mortgage, and sought reimbursement from her husband's estate. The court determined that she was not entitled to reimbursement for the reason that the purchaser secured an extension of the time of payment of the mortgage, thus releasing both the wife and the husband's estate from liability  However, the decision assumes throughout that the husband's liability on the bond and mortgage survived his death and would have been a charge against his estate if subsequent events had not intervened.

In *Matter of Dell* (154 Misc. 216) the property was likewise owned by husband and wife, as tenants by the entirety, and both of them executed the mortgage. On the death of the husband a proceeding was brought to have one-half of the face amount of the mortgage set apart by the representatives of the husband's estate as security for his personal obligation on the bond and mortgage. Other matters, including the validity of an intervening foreign divorce, were involved. The court refused to grant the relief sought on grounds not important here. However, throughout the opinion, it was obviously assumed that the husband's estate was not absolved from ultimate liability on the bond and mortgage by his death. In fact, the court said (at p. 220), " as between the owner of the property upon and after George H. Dell's death and the estate of George H. Dell, the property itself should first satisfy the incumbrance upon it which was the debt of its now sole owner, as well as the debt of George H. Dell."

The court is of the opinion that the conventional relationship of mortgagor and mortgagee existed between Philip Goodman and the plaintiff, and that his liability on the mortgage was not affected by his death. Both Mr. and Mrs. Goodman, by executing the bond and mortgage, became jointly and severally liable as principals. Nothing has occurred to terminate this liability. Plaintiff seeks to assert this liability so far as Mr. Goodman was concerned, against his distributees, pursuant to the provisions of section 170 *et seq.* of the Decedent Estate Law. The action is clearly within the purview of the section. (*Hoard* v. *Luther, supra; Matter of Dusenbery* v. *Bragg,* 241 App. Div. 553; *Wicks* v. *Carmichael,* 172 Misc. 924; *Matter of Horner,* 149 id. 695, 700; *Field* v. *Suchman Corp.,* 135 id.

626.) Consequently, the plaintiff is entitled to recover the debt of Philip Goodman from his distributees to the extent of the assets paid or distributed to them. The disbursements which can be allowed in this proceeding are expressly limited by law to those incurred for printing and referee's fees. (Civ. Prac. Act, § 1505.) Stenographer's fees are not allowable. (*Croghan* v. *Stambler*, 227 App. Div. 667.)

The report of the referee is confirmed and a money judgment for the deficiency herein is granted in the amount of $1,055.44, with interest thereon from January 26, 1939, together with the fees of the referee fixed and allowed in the sum of $100 and motion costs in the amount of $10. It is the duty of the court in proceedings brought under section 170 *et seq* of the Decedent Estate Law to apportion the recovery against each of the defendant distributees. (Dec. Est. Law, §§ 171, 172; *Hoard* v. *Luther, supra*.) The deficiency judgment may be entered in favor of the plaintiff and against the defendant Celia Goodman for the full amount, she being a principal on the bond and mortgage. Inasmuch as the four children of the deceased each received one-sixth of the net estate as their distributive share, judgment may be entered against each of them for one-sixth of the total amount of the judgment, which will not exceed the amount of assets which each received. No judgment should be entered against the administrator as such. Of course, nothing contained herein will prevent these defendants from making whatever arrangements they may see fit to make among themselves for the satisfaction of the judgment.

Submit order accordingly.